**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

NANCY MARRERO,

        Plaintiff,

   – against –

WYCKOFF HEIGHTS MEDICAL CENTER and
PATRICK SULLIVAN, EDISON ENGLISH, and
RICHARD STROUD, in their professional and
individual capacities,

        Defendant.

**Case No. 23 Civ. 1045**

**COMPLAINT**

---

Plaintiff Nancy Marrero hereby alleges the following against Defendants Wyckoff

Heights Medical Center ("Wyckoff" or the "Hospital") and Patrick Sullivan, Edison English, and

Richard Stroud (together, the "Individual Defendants"), in support of her claims of gender

discrimination, sexual harassment, and unlawful retaliation:

**PRELIMINARY STATEMENT**

1.    Plaintiff Nancy Marrero is a dedicated and accomplished former Security

Professional at Defendant Wyckoff Heights Medical Center, a hospital located in Brooklyn, New

York.

2.    Unfortunately, Ms. Marrero was the target of a campaign of insidious sexual

harassment by her direct manager, Security Supervisor Defendant Richard Stroud, for over a

year, which forced her to work in an environment hostile to her due to her sex.

3.    Among other shocking, offensive, sexualized acts, which are detailed more fully

below, Mr. Stroud has unwantedly sent Ms. Marrero **graphic images that resemble a penis**, has

repeatedly asked Ms. Marrero to **send him pictures of her and call him for no legitimate**

**reason**, has openly and disgustingly **commented on the bodies and appearances of female**

**Hospital visitors and patient**s, and has told Ms. Marrero, without invitation, **intimate details about his sexual relationships with multiple Hospital staff** and his **desire to have sex with other female Hospital personnel**, including **the sexual positions he would like to use**.

4.      Even more troubling, in response to Ms. Marrero's rejections of her advances, Mr. Stroud repeatedly **stalked Ms. Marrero outside of work**, following her around public streets while taking pictures and/or videos of her with his phone without her consent, causing her to feel intimidated and fearful for her safety.

5.      Perhaps even more disturbing, the Hospital blatantly and unlawfully retaliated against Ms. Marrero for objecting to Mr. Stroud's unwanted advances and for reporting his sexually harassing behavior to his supervisor, Security Manager Defendant Edison English.

6.      This crusade of insidious retaliation included issuing Ms. Marrero **baseless write-ups and warnings** for alleged actions that other staff members affirmed did not warrant any discipline, reassigning Ms. Marrero to a less desirable post, and **suspending Ms. Marrero for a week without pay**.

7.      Unfortunately, this was not all, as the Hospital further retaliated against Ms. Marrero after she filed a charge of discrimination against the Hospital with the Equal Employment Opportunity Commission ("EEOC"), by interfering with and blocking Ms. Marrero's request to transfer to a job in a different department within the Hospital – a job that the Ms. Marrero had been told was hers, before Senior Vice President of Facilities & Planning Defendant Patrick Sullivan got wind of the transfer and retaliatorily quashed it.

8.      This was the final straw for Ms. Marrero, who courageously endured a relentless campaign of harassment followed by blatant unlawful retaliation for over a year to the detriment of her own health and well-being.  Plaintiff had no choice but to quit her job on November 12,

2022, despite not having a replacement source of income in hand, resulting in a constructive discharge.

9.      No woman should have to work in an environment permeated with such incessant sexualized harassment, much less repeatedly face punishment for speaking out against and reporting the heinous behavior.

10.     Ms. Marrero has been left utterly demoralized and devastated by the Hospital's unlawful and discriminatory actions and has filed this action to hold the Hospital and the Individual Defendants accountable for discriminating against her based on her gender, subjecting her to a work environment infused with severe and pervasive sex-based hostility and harassment, and for ultimately retaliating against her for engaging in protected activity, culminating in her constructive discharge, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 et seq. ("NYCHRL").

## ADMINISTRATIVE REQUIREMENTS

11.     On or about April 15, 2022, Plaintiff Marrero filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") concerning the allegations of discrimination and retaliation set forth in this Complaint.

12.     On or about November 17, 2022, the EEOC issued Plaintiff a Notice of Right to Sue, and this action is being timely commenced within 90 days thereof.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Ms. Marrero's rights under Title

VII.  The Court has supplemental jurisdiction over Ms. Marrero's related claims arising under New York law pursuant to 28 U.S.C. § 1367(a).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because: (i) the Hospital resides in this district; and (ii) a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## <u>PARTIES</u>

15.     Plaintiff Nancy Marrero is a former employee of Wyckoff Heights Medical Center and is a female resident of Queens, New York.  At all relevant times, Ms. Marrero qualified as an "employee" under all relevant statutes.

16.     Defendant Wyckoff Heights Medical Center Hospital is a hospital and domestic not-for-profit corporation located at 374 Stockholm Street, Brooklyn, New York, 11237.  At all relevant times, the Hospital controlled the terms and conditions of Plaintiff's employment and qualified as an "employer," and "employed" Ms. Marrero under all relevant statutes.

17.     Defendant Patrick Sullivan is an employee of Wyckoff and holds the title of Senior Vice President of Facilities & Planning.  At all relevant times, Mr. Sullivan controlled and/or had substantial influence over the terms and conditions of Ms. Marrero's employment.  At all relevant times, Mr. Sullivan qualified as an "employer" and "employed" Ms. Marrero under all relevant statutes.

18.     Defendant Edison English is an employee of Wyckoff and holds the title of Security Manager.  At all relevant times, Mr. English controlled and/or had substantial influence over the terms and conditions of Ms. Marrero's employment.  At all relevant times, Mr. English qualified as an "employer" and "employed" Ms. Marrero under all relevant statutes.

19.     Defendant Richard Stroud is an employee of Wyckoff and holds the title of Security Supervisor.  At all relevant times, Mr. Stroud controlled and/or had substantial influence over the terms and conditions of Ms. Marrero's employment.  At all relevant times, Mr. Stroud qualified as an "employer" and "employed" Ms. Marrero under all relevant statutes.

## FACTUAL ALLEGATIONS

### I.     Ms. Marrero's Lengthy Tenure and Strong Performance at the Hospital

20.     Nancy Marrero is a 46-year-old hardworking mother of two who dutifully and reliably served as a Security Professional at the Hospital since 2012 through her constructive discharge in November 2022, after previously holding that position from 2003 to 2006.

21.     As evidenced by her continuous, decade-long tenure at the Hospital, Ms. Marrero was well respected and liked by Hospital staff, patients, and visitors alike.

22.     In fact, in 2021, the family of one patient sent Ms. Marrero a "thank you" card in which they thanked Ms. Marrero for "helping out" the patient and described her as being "so helpful."

### II.     Mr. Stroud Relentlessly Sexually Harasses Ms. Marrero for Over a Year

23.     Since virtually the moment he became Ms. Marrero's supervisor in or around January 2021, Defendant Richard Stroud relentlessly subjected Ms. Marrero to a sustained campaign of sexual harassment, both by creating a sex-based hostile work environment and by engaging in *quid pro quo* harassment, only some examples of which are described below.

24.     For instance, Mr. Stroud repeatedly sent Ms. Marrero unwanted, often sexually graphic text messages and images.

25.     Mr. Stroud also sent Ms. Marrero numerous text messages requesting that she send him pictures of her or call her for no legitimate reason merely because he "needed" her, or she supposedly "needed" him (untrue).

26.     To be clear, at no point ever did Ms. Marrero express any romantic interest whatsoever towards Mr. Stroud, nor have the two ever had any semblance of a romantic relationship.

27.     Mr. Stroud has also sent Ms. Marrero uninvited flirtatious messages containing heart emojis, as well as crude videos, including a TikTok video of a Muppet-like character struggling to defecate after apparently "holding it in" all day at work.

28.     Perhaps the most explicit and inappropriate message Mr. Stroud unwantedly sent Ms. Marrero is an image of what appears to be a penis:



29.     Ms. Marrero was shocked and incredibly offended when she received these grossly inappropriate messages and did not respond to them.

30.    Mr. Stroud also subjected Ms. Marrero to a sexually charged, hostile work environment by openly speaking about female Hospital staff, visitors, and patients in disgusting, derogatory, and sexual terms in her presence.

31.    Mr. Stroud routinely made vulgar comments about the weight and bodies of female visitors and patients, including about their rear ends and how their **vaginas would look like "fists"** if the person wore tight pants.

32.    For other female visitors and patients, Mr. Stroud boorishly proclaimed how he **"wouldn't fuck them with a borrowed dick,"** or that they **"look like shit"** or **"a piece of shit."**

33.    Mr. Stroud even disgustingly compared some female visitors and patients to **sea creatures and other animals**.

34.    Mr. Stroud often discussed, in Ms. Marrero's presence, how he wanted to **"fuck"** certain female Hospital employees.  He routinely described in explicit, revolting detail how long he envisioned their sexual encounters lasting and the different sexual positions he would use, such as **"doggy style."**

35.    Mr. Stroud also disclosed to Ms. Marrero, without invitation, that he was **sleeping with two female Hospital employees**, and how those women objected to him spreading rumors about them and discussing intimate details about their sex lives with coworkers.

36.    Mr. Stroud gloated, however, that these women were too afraid to report his conduct because of their subordinate positions, suggesting that Mr. Stroud had victimized other women at the Hospitals besides Ms. Marrero.

37.    Further, Mr. Stroud targeted and badmouthed one male Security Officer merely because that Security Officer previously dated a female Hospital employee with whom Mr. Stroud pursued an intimate relationship.

38.     In response to Ms. Marrero's vehement rejections of his unwanted advances, Mr. Stroud **repeatedly followed and stalked Ms. Marrero outside of the Hospital**.

39.     For instance, Mr. Stroud would come up to Ms. Marrero after she left the Hospital to go on break and **grab her hand and/or try to wrap his arm around her shoulders** as if they were romantically involved.

40.     Ms. Marrero resisted and shrugged Mr. Stroud off her each time, making it clear that she was not interested in him, to which Mr. Stroud would make comments along the lines of **"that can change."**

41.     Ms. Marrero even documented one incident in October 2021 – witnessed by a fellow female Security Officer – in which Mr. Stroud suddenly approached Ms. Marrero outside the Hospital in front of a restaurant and persisted in trying to get Ms. Marrero to speak with him despite her vociferous objections and requests that he stay away from her.

42.     Mr. Stroud continued to badger Ms. Marrero in a threatening manner, causing her to raise her arms in a defensive stance.

43.     Eventually, this female Security Officer and another Hospital employee sensed that Ms. Marrero was in distress and walked towards her, prompting Mr. Stroud to duck inside the restaurant.

44.     After Ms. Marrero was able to escape the situation, the female Security Officer admonished the much larger and more physically imposing Mr. Stroud for frightening Ms. Marrero.

45.     In response, Mr. Stroud lamented about how he "truly missed" Ms. Marrero and how "close" they supposedly once were, making it clear that Mr. Stroud was acting in a such a disturbing and threatening manner because Ms. Marrero was not receptive to his advances.

46.     During another instance in December 2021, Mr. Stroud followed Ms. Marrero after she completed her shift and walked towards the subway, **holding up his phone up to apparently take pictures and/or videos of her without her consent**.

47.     Ms. Marrero was so troubled and shaken by Mr. Stroud's actions that she had to call out sick the next day.

48.     By all measures, Mr. Stroud created a sexualized, hostile, and intolerable work environment for Ms. Marrero, in which he relentlessly subjected her to sexual harassment and discrimination.

III.     **Ms. Marrero's Complaints Against Mr. Stroud Fall on Deaf Ears**

49.     Ms. Marrero reported Mr. Stroud's sexual harassment to Mr. Stroud's supervisor, Defendant English, repeatedly throughout the spring through fall of 2021.

50.     However, Mr. English tried to minimize and brush aside her complaints, such as by trying to flip the narrative by asking Ms. Marrero what *she* had done to make Mr. Stroud become so obsessed with her.

51.     Other times, Mr. English would tell Ms. Marrero that his hands were tied, and he could not and will not discipline Mr. Stroud because the Hospital had no one to replace him with. He would justify his failure to act by claiming that it would be a long process to find a replacement for Mr. Stroud, and how that would mean that other supervisors would need to work longer hours.

52.     To evidence just how intolerable Mr. Stroud's harassment had become, upon being told by Mr. English that he would not help her unless a replacement for Mr. Stroud was found, Ms. Marrero persuaded a male fellow Security Officer to apply to become a supervisor

himself in hopes that he could replace Mr. Stroud.  This male Security Officer even expressed his interest in the supervisor position to Mr. English.

53.     It was not surprising, however, that Mr. English utterly failed to protect Ms. Marrero against Mr. Stroud's sexual harassment given his own sexist attitude towards women, as judged by his repeated comments about how he did not want to hire women "because they cause too many problems."

54.     Mr. English's words were not merely said in jest, as he rarely, if ever, hired female job applicants whose resumes were submitted by Hospital employees.

**IV.    Ms. Marrero is Retaliated Against for Engaging in Protected Activity**

55.     Emboldened by Mr. English's failure to address Ms. Marrero's complaints about his sexually harassing behavior, Mr. Stroud and other Hospital managers engaged in a concerted campaign to unlawfully retaliate against and further harass Ms. Marrero.

56.     For instance, in October 2021, Ms. Marrero and several other Hospital staff complained that Mr. Stroud failed to act when there was a fire in the Hospital, and about how he scolded Ms. Marrero to **"shut up and mind your business – no one is talking to you"** when she asked him to help clear the Hospital's lobby.

57.     However, incredibly, it was *Ms. Marrero* who was baselessly disciplined and written up by Mr. Stroud.

58.     Moreover, in November 2021, Mr. Stroud disciplined Ms. Marrero for a complaint that *he* had encouraged a patient and her family to make against Ms. Marrero, even though multiple coworkers confirmed that Ms. Marrero had done nothing wrong and should be commended for maintaining her composure despite being called a "bitch" by the patient in question.

59.     Around this time, Ms. Marrero was also inexplicably **suspended for five days without pay** and removed from her post and reassigned to the Hospital's COVID-19 clinic just as COVID-19 cases continued to spike.

60.     The purported reason for this harsh discipline was because Ms. Marrero was allegedly "insubordinate" and broke supposed Hospital "rules and regulations" by bringing unspecified "personal problems to work," being "argumentative" with unidentified coworkers, and for being "rude" and not showing "respect" to Mr. Stroud.

61.     These alleged "personal problems," however, were simply Ms. Marrero's complaints against Mr. Stroud for sexually harassing her, for which Mr. Stroud was determined to punish Ms. Marrero.

62.     Later in November 2021, Ms. Marrero was issued a "final warning" allegedly because *she*, ironically, created a "hostile work environment" by supposedly staring at Mr. Stroud "with anger" and making him feel "uncomfortable." It practically goes without saying how baseless and utterly retaliatory this disciplinary action was.

63.     Further, as described above, Mr. Stroud also retaliated against Ms. Marrero for objecting to his sexually harassing behavior and rejecting his unwanted advances by repeatedly stalking her outside the Hospital, attempting to grab and speak to her against her objections, and even taking pictures and/or videos of her without her consent.

64.     In addition, Ms. Marrero became *persona non grata* among Hospital management, including the Hospital's Vice President of Facilities and Support Services, Defendant Patrick Sullivan, who offensively insinuated that Ms. Marrero was having an intimate relationship with Mr. Stroud.

65.     In addition, Mr. English ignored and effectively froze out Ms. Marrero for engaging in protected activity.

66.     Tellingly, in early-April 2022, Mr. English unjustifiably snapped at Ms. Marrero for simply asking him whether she would have to remain posted at the COVID-19 clinic, rebuking her sharply, **"Nancy, I am tired of all the bullshit you started!"**, before failing to give her an answer.

67.     The harassment and insidious campaign against Ms. Marrero continued unabated, despite the multitude of complaints and pleas for help she made.  To add insult to injury, Ms. Marrero was never paid back for the wages she was unlawfully and retaliatorily docked in November 2021.

**V.      Ms. Marrero Files a Charge of Discrimination With the EEOC, and is Further Retaliated Against, Culminating in Her Constructive Discharge**

68.     On or about April 15, 2022, Ms. Marrero filed a Charge of Discrimination with the EEOC ("EEOC") in relation to the discrimination and retaliation she experienced at Wyckoff as described above, and sent Wyckoff a copy of her charge.

69.     In early September 2022, Ms. Marrero became aware that the Hospital's Dietary Department was looking for candidates to fill open positions within the department.

70.     Plaintiff expressed interest in transferring to a new position within the Dietary Department, particularly in light of the relentless campaign of harassment, discrimination, and retaliation she had to endure within the Security Department.

71.     On or about September 20, 2022, Ms. Marrero met with Jaclyn O'Connor, the Director of the Dietary Department, and Petal Emanuel, a Dietary Department supervisor, to interview for the open positions.

72.     Both Ms. O'Connor and Ms. Emanuel expressed how impressed they were by Ms. Marrero's resume, and how they had received positive feedback about her from colleagues.

73.     In fact, when Ms. Marrero said that she felt nervous being interviewed, Ms. Emanuel told her to "not worry; the job is yours.  Don't think of this as an interview."

74.     At the end of the interview, Ms. Marrero disclosed that she had been baselessly written up and disciplined back in October 2021, as discussed *supra*.  Ms. O'Connor told Ms. Marrero that the prior discipline would "not be an issue," in part because Ms. Marrero would be joining a different union if she took on a role with the Dietary Department.

75.     Ms. O'Connor assured Ms. Marrero that, so long as Defendant English approved her transfer, the position in the department was hers.

76.     This meeting concluded with Ms. O'Connor saying that she would speak to human resources about and fill out paperwork to facilitate Ms. Marrero's transfer, while Ms. Emanuel welcomed Ms. Marrero to the Dietary Department and asked her when she could begin working in her anticipated new role.

77.     The next day, September 21, 2022, a colleague of Ms. Marrero's told her that she had spoken to Ms. O'Connor and that Ms. O'Connor confirmed with her that Ms. Marrero would be hired into the role in the Dietary Department and was just waiting on clearance from human resources and Mr. English.

78.     Then, on or September October 23, 2022, Mr. English approved Ms. Marrero's transfer.

79.     After obtaining Mr. English's written approval, Ms. Marrero immediately walked over to Ms. O'Connor's office to the deliver the paper but noticed that Ms. O'Connor's demeanor had completely changed.  Ms. O'Connor started nervously saying that she had to still

wait for her boss, Defendant Patrick Sullivan, to discuss Ms. Marrero's October 2021 write-up before she could move any further with Ms. Marrero's transfer.  Ms. O'Connor further changed her tune by suddenly claiming that the Hospital was considering returning the person who had vacated the position Ms. Marrero had applied for back to the role.  However, Ms. Marrero reminded Ms. O'Connor that she had been told that there were multiple open positions within the Dietary Department.

80.     Suffice to say, Ms. Marrero was never transferred to a role within the dietary department despite the assurances she received to the contrary.  It was clear, however, that as soon as Defendant Sullivan caught wind that Ms. Marrero was about to be transferred to a new role at the Hospital, he immediately interjected and thwarted the transfer simply to further retaliate against and punish Ms. Marrero for engaging in protected activity (*i.e.*, by filing a charge of discrimination with the EEOC).

81.     Ms. Marrero was devastated, as she had looked forward to moving to a new role within a different department, which would have given her the opportunity to distance herself from the incessant harassment, discrimination, and retaliation she had been experiencing within the Hospital's security department.  Instead, the Hospital and Defendant Sullivan actively foiled Ms. Marrero's efforts merely to penalize her for standing up for her rights and demanding to work in an environment free of discrimination and sexual harassment.

82.     Defendants actively made Ms. Marrero's work environment so intolerable and hostile that she had no choice but to resign a few weeks later on November 12, 2022, despite having no other job or replacement source of income in hand.

83.     Defendants' unlawful conduct forced Ms. Marrero's constructive discharge.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of Title VII)**
**Against Wyckoff Heights Medical Center**

84.  Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

85.  By the actions detailed above, among others, Defendant Wyckoff gas discriminated against Plaintiff in violation of Title VII by, *inter alia*, denying her the equal terms and conditions of employment, subjecting her to unwanted sexual harassment, and by forcing her constructive discharge because of her gender (female).

86.  As a direct and proximate result of Defendant Wyckoff's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

87.  As a direct and proximate result of Defendant Wyckoff's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

88.  Defendant Wyckoff's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

89.  Plaintiff is also entitled to payment of her attorneys' fees and litigation costs from Defendant Wyckoff.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of Title VII)**
**Against Wyckoff Heights Medical Center**

90.  Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

91.     By the actions detailed above, among others, Defendant Wyckoff has retaliated against Plaintiff based on her protected activities in violation of Title VII, including by subjecting her to baseless write-ups and discipline, denying her the ability to transfer to a different position within the Hospital, and by constructively discharging Plaintiff resulting in the termination of her employment.

92.     As a direct and proximate result of Defendant Wyckoff's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

93.     As a direct and proximate result of Defendant Wyckoff's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

94.     Defendant Wyckoff's unlawful and retaliatory actions constitute malicious, willful and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

95.     Plaintiff is also entitled to payment of her attorneys' fees and litigation costs from Defendant Wyckoff.

**THIRD CAUSE OF ACTION**
**(Discrimination in Violation of the NYSHRL)**
**Against All Defendants**

96.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

97.     By the actions detailed above, among others, Defendants have discriminated against Plaintiff in violation of the NYSHRL by, *inter alia*, denying her the equal terms and

conditions of employment, subjecting her to unwanted sexual harassment, and by forcing her

constructive discharge because of her gender (female).

98.     As a direct and proximate result of Defendants' unlawful discriminatory conduct

in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or

economic harm, for which she is entitled to an award of monetary damages and other relief, in

addition to reasonable attorneys' fees and expenses.

99.     As a direct and proximate result of Defendants' unlawful discriminatory conduct

in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and

emotional distress, for which she is entitled to an award of monetary damages and other relief.

100.    Defendants' unlawful and discriminatory actions constitute malicious, willful, and

wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive

damages.

### FOURTH CAUSE OF ACTION
#### (Retaliation in Violation of NYSHRL)
#### Against All Defendants

101.     Plaintiff hereby repeats and re-alleges each and every allegation in each of the

preceding paragraphs as if fully set forth herein.

102.    By the actions detailed above, among others, Defendants have retaliated against

Plaintiff based on his protected activities in violation of the NYSHRL, including by subjecting

her to baseless write-ups and discipline, denying her the ability to transfer to a different position

within the Hospital, and by constructively discharging Plaintiff resulting in the termination of her

employment.

103.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in

violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or

economic harm, for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

104.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

105.     Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**FIFTH CAUSE OF ACTION**
**(Aiding and Abetting Discrimination and Retaliation in Violation of the NYSHRL)**
**Against the Individual Defendants**

106.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

107.     By the actions described above, among others, the Individual Defendants knowingly or recklessly aided and abetted and directly participated in the unlawful discrimination and retaliation to which Plaintiff was subjected in violation of the NYSHRL.

108.     As a direct and proximate result of the Individual Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

109.     As a direct and proximate result of the Individual Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which he is entitled to an award of damages.

110.    The Individual Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Discrimination in Violation of NYCHRL)
### Against All Defendants

111.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

112.    By the actions detailed above, among others, Defendants have discriminated against Plaintiff in violation of the NYCHRL by, *inter alia*, denying her the equal terms and conditions of employment, subjecting her to unwanted sexual harassment, and by forcing her constructive discharge because of her gender (female).

113.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damage s and other relief, in addition to reasonable attorneys' fees and expenses.

114.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of monetary damages and other relief.

115.    Defendants' unlawful and discriminatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)
### Against All Defendants

116.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

117.    By the actions detailed above, among others, Defendants have retaliated against Plaintiff based on his protected activities in violation of the NYCHRL, including by subjecting her to baseless write-ups and discipline, denying her the ability to transfer to a different position within the Hospital, and by constructively discharging Plaintiff resulting in the termination of her employment.

118.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

119.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

120.    Defendants' unlawful and retaliatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION
**(Aiding and Abetting Discrimination and Retaliation in Violation of the NYCHRL)**
**Against the Individual Defendants**

121.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

122.    By the actions described above, among others, the Individual Defendants knowingly or recklessly aided and abetted and directly participated in the unlawful discrimination and retaliation to which Plaintiff was subjected in violation of the NYCHRL.

123.    As a direct and proximate result of the Individual Defendants' unlawful actions in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic damages, mental anguish, and emotional distress for which she is entitled to an award of damages.

124.    The Individual Defendants' unlawful actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.    An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.      An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

D.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages;

F.      An award of punitive damages;

G.      Pre-judgment interest on all applicable amounts due;

H.      Post-judgment interests on all applicable amounts due;

I.      An award of costs that Plaintiff incurs in this action, as well as an award of reasonable attorneys' fees to the fullest extent permitted by law; and

J.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issue of fact and damages stated herein.

Dated: February 8, 2023
       New York, New York                        Respectfully submitted,

**FILIPPATOS PLLC.**

By: _____
         Tanvir H. Rahman
199 Main Street, Suite 800
White Plains, New York 10601
T/F: 914.984.1111
trahman@filippatoslaw.com

*Attorneys for Plaintiff*